The opinion of the court was delivered by
Hornblower, C. J.
The road laid out by the surveyors, in this case, is a straight line from the place of beginning to the termination. In their return, they give the course and distance, and say the line thus designated, is to be the centre or middle of a road three rods wide; that they have marked it at proper distances, and have returned therewith “ a map and draught of the said road, with the courses and distances, and reference to the most remarkable places, and the improvements through which it passes.” The return is accompanied with a map, showing the line of the road; the chestnut tree where it begins, the dock at which it terminates, and the public roads which it crosses ; and then, at different distances from each other, are short dotted lines crossing the line of the road, and in the spaces between those dotted lines, are written the names of different persons. On the coming in of the return,'the Court of Common Pleas, on motion, set it aside, assigning as their reason for it, that the return, and map accompanying the same, has not referred to the improvements through which the road passes. The only reason filed, in support of that motion, was, “ that the map and return did not show the improvements through which the road runs.”
The direction in the statute is as follows : “ The surveyors shall cause the road to be marked at proper distances, and make return thereof, with a map or draught of the same, with the *424 courses and distances,” (of the road,) “ and reference to the most remarkable places, and the improvements through which it may pass.” 1
The counsel for the defendants has furnished us with an extensive, and certainly an instructive argument, drawn from English history and legislation, to show that the word improvements is a legal and technical word, and means inclosures, or inclosed fields: lands fenced in, and thus withdrawn and separated from the wastes or common lands. I have no difficulty in yielding my full assent to this proposition. I am satisfied that the word improvements, in the road act, does not mean dwelling houses or barns: for roads are not laid out “ through ” them. The improvements spoken of, must be such as a road may pass through: viz. inclosures, gardens and fields fenced in ; precisely what I apprehended is meant by the same word, in the sixth section of the act to regulate fences, (Elm. Dig. 194,) by which it is enacted, that “ when any partition fence is or shall be made between any two persons, — if either of them should think proper to give up his improvements, and leave the same open and common, such person, Ac.” — Now here the word is explained, by the act itself, and cannot be misunderstood. It undoubtedly means, “ his inclosed lands.” Thus far I have no difficulty in going with the counsel for the defendants; but it was contended that the surveyors’ map, accompanying their return, must exhibit a survey of each inclosed field through which the road is to pass, so that the owners of lands, by inspecting the maps, might-see how and where the road crosses their respective inclosures, and into what forms and angles it cuts their lands. But the statute does not require it; and it is very fortunate that it does not, It would lead to interminable quarrels and insuperable difficulties. If the surveyors’’ map must show the size and shape, th'e’courses and distances on all sides of every inclosed -field through which they pass, they must do it correctly, accurately, or else cui bono f But the statute only requires “a reference to the improvements;” that is, to the inclosures, or inclosed fields. Have the surveyors, in this instance, substantially complied with the direction of the statute? When we inspect this map, it is obvious to remark, that* it has not been executed with much care; it has a coarse and unfinished appearance. Nevertheless, it gives us the line of the road ; its *425 beginning and ending; its course and distance; it designates the most remarkable places — the chestnut tree ; the dock or wharf where the road terminates and existing public highways with which it comes in contact. More than this, they have placed dotted lines, indicative of partition lines, or fences, between tho different lots or fields through which the road runs in its whole extent; and they have written names, probably of the owners, or reputed owners of the different lots, upon the spaces between the dotted lin^s. They have not, indeed, written upon those spaces, the word improvement, or inclosed fields; nor have they marked out their shapes, or written down their contents, nor stated, in terms, to whom they severally belong, or are reputed to belong: nor does the statute require them to do so. The dotted lines and names introduced on the map, have some meaning; and what can that be, unless they mean to show that the spaces between the dotted lines are improvements, or inclosed fields, belonging to the individuals named ?
If the road, in its whole extent, ran through wild lands, or a common, there would have been no necessity for such marks and references, as we find on this map. If more particularity is necessary, than is here given, I. know not where we are to stop. What is meant by a “ reference to improvements ” — to inclosed fields ? Does it mean a description of them by metes, courses and bounds ? Does it require the word “ fence,” or the word improvements, to be written on the maps ? Must the maps show who are the owners, or reputed owners ? Suppose the surveyors, or their practical surveyor, should make a mistake in any of these particulars; will it vitiate the return ? I cannot believe that it was the intention of the legislature to embarrass the laying out of public highways by any such requirements. I think the return and map, in this case, a substantial compliance with the statute, and, therefore, that the judgment of the common pleas ought to be reversed, and the record remitted to that court, to be proceeded on according to law.

Judgment reversed.

Cited in State v. Smith, 1 Zab. 92; State v. Hulick, 8 Vr. 71.